HOOD, Judge
(dissenting).
I agree with the majority that Mrs. Carolyn Boyles Dahlquist (now Mrs. Perkins) is the sole primary beneficiary of the policy, and that there has been no change of the beneficiary. I do not agree, however, that the community property settlement entered into between the insured and Mrs. Dahlquist constituted a renunciation by Mrs. Dahlquist of her rights as beneficiary under that policy.
My colleagues point, out, correctly, that the insurance policy at issue here is not mentioned at all in the community property settlement. Yet, they conclude that “it was the mutual intent that the wife renounce all of her rights as beneficiary under the policy.” Mrs. Dahlquist denies that there was any such intent, and I think Mr. Dahl-quist indicated by his actions that there was to be no change in the beneficiary.
The majority bases its conclusion that Mrs. Dahlquist intended to renounce her rights as beneficiary on findings: (1) That the community settlement was signed after the final divorce on January 6, 1970; (2) that in that agreement the wife divested herself of any comnCunity assets not mentioned; and (3) that “it is illogical to conclude that Mr. Dahlquist intended his divorced wife to receive a large sum of money represented by the proceeds of his insurance.”
My colleagues state twice in the majority opinion that the community property settlement was entered into after the parties were finally divorced on January 6, 1970. The opinion implies that there must have been some animosity between the parties following the divorce. The record shows clearly that that agreement was signed several weeks before the final divorce was granted. A judgment decreeing a separation between the parties was rendered on May 12, 1969. The judgment of final divorce was rendered on January 6, 1970. The community property settlement agreement was entered into and executed by the parties on November 10, 1969, or approximately two months before the final divorce was granted. The trial judge noted in his reasons for judgment, and counsel for appellants state in their brief, that this agreement was signed on November 10, 1969, and there is nothing in the record indicating that the agreement was signed at any other time. The majority erred, therefore, in finding that the agreement was entered into after the parties were finally divorced.
Although Mr. and Mrs. Dahlquist were judicially separated when the property settlement agreement was entered into, they were still husband and wife at that time. There is nothing in the record to show that any animosity or bitterness existed between the parties, and I find no evidence at all to support the majority’s statement that “the wife was leaving everything, husband, home and children.” The majority clearly erred in finding that the property settlement was entered into after the final divorce, and I feel that they are making a mistake in concluding that the wife was callous and that the husband was bitter toward her when that agreement was entered into.
The second important finding of the majority is that the intent of the “catch-all clause” was that the wife divest herself of any community assets not mentioned. Having reached that conclusion, they reason that Mrs. Dahlquist intended to divest herself of the “benefits of the life insurance policy,” and then they go further and hold that she intended to renounce her rights as beneficiary under that policy. I agree that Mrs. Dahlquist conveyed her interest in the remaining community property to her husband, but I do not feel that the other conclusions reached by my colleagues are justified.
The “catch-all clause” of the property settlement agreement provides that Mrs. Dahlquist conveys to Mr. Dahlquist “all her right, title and interest in and to the following: .Any and all other community property located in the State of Louisiana not specifically described herein.”
*373 The majority has held, correctly I think, that by virtue of that agreement Mr. Dahl-quist became the owner of the policy, with whatever cash or loan value it may have had. That, of course, is all that the community could possibly have owned, insofar as the insurance contract was concerned. The “benefits” provided in the policy, or the beneficiary’s “hope of receiving” those benefits, did not constitute a part of the community, and Mrs. Dahlquist thus did not even purport to convey those benefits, or hope of receiving them, to her former partner in the community.
If Mrs. Dahlquist had intended to convey to her husband the benefits which she hoped to receive as beneficiary, I believe the parties would have included such a provision in the agreement. It would have been somewhat ridiculous, of course, for Mrs. Dahlquist to convey to her husband the insurance benefits which she expected to receive after his death. Yet, that is substantially the interpretation which the majority has placed on the property settlement agreement. Their reasoning, as I understand the majority opinion, is that Mrs. Dahlquist has conveyed to her husband her hope of receiving benefits under the policy, and that she thus has renounced her own right to receive those benefits.
I do not believe that the agreement can reasonably be interpreted as showing that Mrs. Dahlquist intended to renounce her rights as beneficiary of the policy.
My colleagues have determined, finally, that this court should change the beneficiary named in the policy, or that it at least should strike out the name of the beneficiary designated by the insured, because “it is illogical to conclude that Mr. Dahl-quist intended his divorced wife to receive the large sum of money represented by the proceeds of his insurance.” I disagree for several reasons.
First, I think it is illogical to conclude that Mr. Dahlquist intended for anyone other than Mrs. Dahlquist to receive the benefits of the policy. He formally designated her as beneficiary when the policy was issued in 1964, and he made no change in the beneficiary thereafter. No mention was made of the policy, or of changing the beneficiary, in the 1969 community property settlement agreement, and no endorsement was ever attached to the policy indicating that the beneficiary was to be changed. This concursus proceeding was instituted solely because of the uncertainty as to who had been designated as the primary beneficiary in 1964, not because of any possible change of the beneficiary or renunciation of benefits after that date. The evidence is overwhelming, I think, to the effect that the insured did not intend to change the beneficiary at all.
Mr. Dahlquist obviously had legal advice when the property settlement agreement was entered into. His attorney, in fact, acted as the notary before whom that agreement was executed. If he had intended to change the beneficiary of the policy by means of that agreement, or if there was a mutual intent that Mrs. Dahlquist was renouncing her rights as beneficiary, I think some mention of the policy or of a change of the beneficiary or of the mutually intended renunciation would have been included in the agreement. Certainly, Mr. Dahlquist’s attorney would not have allowed-the “catch-all clause” of the agreement to serve as the only evidence of Mrs. Dahl-quist’s renunciation or of his client’s desire to change the beneficiary. Since neither Mr. Dahlquist nor his attorney included such a stipulation in the agreement, I am convinced that they did not intend for the settle-agreement to have any such effect.
Seven months elapsed between the time the property settlement agreement was signed and the time of Mr. Dahlquist’s death. During that time the insured made no effort at all to change the beneficiary of the policy. He was the insured and the owner of the policy, and as such he had the right and authority to change the beneficiary at any time. The procedure for changing the beneficiary is simple. If the insured had merely contacted his insurance *374 agent the change undoubtedly would have been made immediately. As already pointed out, he had engaged an attorney and he must have known that such a procedure was the proper and the only safe way of changing the beneficiary. Since Mr. Dahlquist made no attempt to change the beneficiary at any time, it is logical to assume that one of the following things occurred: (1) Mr. Dahlquist forgot about the policy when the property settlement agreement was executed in 1969; or (2) he intended to change the beneficiary at a later date and neglected to do so before his death; or (3) he did not intend to change the beneficiary.
The most logical conclusion, I think, is that he did not intend to change the beneficiary at all. In any event, I feel that the majority has seriously erred in changing the beneficiary, or in depriving Mrs. Dahlquist of her rights as beneficiary, in this instance. I do not believe that a decision of this kind should be based on speculation that the insured later acquired some animosity toward the person whom he had named as beneficiary, and that he thus wanted to deprive her of the right to receive benefits under the policy. In my opinion, the evidence does not justify a finding that Mrs. Dahlquist had treated her husband and children badly, but even if she did I do not believe that the court should undertake to punish her for her actions by depriving her of the insurance benefits which Mr. Dahlquist specified were to be paid to her. Finally, I think the majority is mistaken in concluding, on the basis of the record before us here, that Mr. Dahlquist ever wanted or intended to eliminate Mrs. Dahlquist as the primary beneficiary under his policy.
I am convinced that the parties never intended for the community property settlement agreement to have any effect at all on the beneficiary of the insurance policy, and that it did not operate as a renunciation by Mrs. Dahlquist of her rights as beneficiary. I do not know whether Mr. Dahlquist ever entertained the idea of changing the beneficiary of the policy, but the fact is that he did not make any such change, even though he had the authority and ample time within which to do so.
In my opinion the trial court was correct in awarding the proceeds of the policy to Mrs. Dahlquist.
For these reasons I respectfully dissent.